UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE V.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security ,<br><br>                                    Defendant. | Case No.:  3:19-cv-703-AHG<br><br>**ORDER RESOLVING PLAINTIFF'S<br>MOTION FOR JUDICIAL REVIEW,<br>REVERSING DENIAL OF<br>BENEFITS, AND REMANDING FOR<br>PAYMENT OF BENEFITS**<br><br>**[ECF No. 20]** |

Plaintiff Rose V. ("Plaintiff") filed this action on April 17, 2019, seeking review of the Commissioner of Social Security's ("Commissioner") denial of her application for social security disability and supplemental security income benefits. ECF No. 1. The parties consented to proceed before a Magistrate Judge on April 29, 2019. ECF No. 5. Pursuant to the Court's Order (ECF No. 17), Plaintiff filed her merits brief on February 5, 2020. ECF No. 20. The Commissioner timely filed his opposition brief on March 11, 2020. ECF No. 23. Plaintiff did not file a reply brief. The Court found this motion suitable for determination on the papers and, in accordance with Civil Local Rule 7.1(d)(1), it has taken the briefing under submission without oral argument.

After a thorough review of the motion, the administrative record, and applicable law, for the reasons set forth below, the Court **GRANTS** Plaintiff's motion, **REVERSES** the Commissioner's denial of benefits, and **REMANDS** for payment of benefits.

## I.   BACKGROUND

Plaintiff was born in 1969. Administrative Record ("AR") at 28. The record demonstrates that she has not been employed for the past 15 years,[1] so she is considered to have no relevant past work. AR 27–28.

On June 3, 2015, Plaintiff filed an application for Social Security Disability Insurance, alleging a disability onset date of January 1, 2000.[2] AR 20, 150. The Commissioner denied Plaintiff's claim on October 27, 2015, and denied Plaintiff's request for reconsideration of the denial on March 18, 2015. AR 83, 89. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 12, 2018. AR 35, 43. Plaintiff was represented by counsel at the hearing, and provided testimony. AR 43–57, 112. A vocational expert also testified. AR 53–54.

On May 11, 2018, the ALJ issued a decision denying Plaintiff's request for benefits, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act from January 1, 2015, through the date of his decision. AR 20–29. Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 250–53. When the Appeals Council denied Plaintiff's request for review on November 30, 2018 (AR 6–8), the ALJ's decision became the final decision of the Commissioner. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008).

## II.   THRESHOLD ISSUE OF TIMELINESS

Claimants appealing from adverse decisions by the Commissioner of Social Security "may obtain a review of such decision by a civil action commenced within sixty days after

---

[1] Plaintiff does, however, have a few weeks of work experience during high school. In 1984, Plaintiff briefly worked at Pizza Inn; in 1985, she briefly worked at Jack in the Box and Wendy's; in 1986, she briefly worked at Sutherland Management Company; in 1987, she briefly worked at another Jack in the Box; and in 1989, she worked at Lerner New York. AR 169–70. The lengths of her employment at each were from one day to one week. AR 246.

[2] Even if a claimant is ultimately found disabled and entitled to supplemental security income, it is not payable to a claimant prior to the month following the month in which the application was filed. 20 C.F.R. § 416.355.

the mailing[3] to h[er] of notice of such decision." 42 U.S.C. § 405(g). If a claimant does not file a civil action within the prescribed 60-day time frame, she loses the right to judicial review. 20 C.F.R. § 404.900(b). Here, the Appeals Council Letter explained these rules and regulations to Plaintiff, in plain and clear language. *See* ECF No. 14-2 at 7–11 (Appeals Council Letter, stating "[i]f you disagree with our action, you may ask for court review of the Administrative Law Judge's decision by filing a civil action. … You have 60 days to file a civil action []. The 60 days starts the date after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period."). Courts have dismissed cases filed only days after the expiration of the statute of limitations. *See, e.g.*, *Del Rosario v. Berryhill*, No. 18cv7191-DMR, 2019 WL 5067011, at *16 (N.D. Cal. Oct. 9, 2019) (dismissing complaint filed two days late); *Atherton v. Colvin*, No. CV13-4870-AS, 2014 WL 580167, at *4 (C.D. Cal. Feb. 12, 2014) (dismissing complaint filed four days late).

Plaintiff had sixty-five days from the date the Appeals Council Letter was mailed, i.e., until February 3, 2019, to file a civil action seeking judicial review of the Commissioner's final decision. *See* AR 6–8 (Appeals Council Letter, mailed on November 30, 2020). On January 23, 2019, Plaintiff requested an extension of the filing deadline. AR 4. On March 15, 2019, the Administrative Appeals Judge granted Plaintiff's request and gave Plaintiff a 30-day extension. AR 1. Thus, Plaintiff had 35 days from the date the letter was mailed to file a civil action. AR 1; *see* 20 C.F.R. § 422.210(c) (date of receipt is presumed to be 5 days after letter date). Plaintiff initiated the current action on April 17, 2019—33 days after the letter was mailed. *See* ECF No. 1. Thus, Plaintiff's complaint is timely.

---

[3] Although § 405(g) uses the word "mailing," the regulation provides that a civil action "must be instituted within 60 days after the Appeals Council's notice . . . is received by the individual" and that "the date of receipt . . . shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." 20 C.F.R. § 422.210(c).

1

## III.   THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Substantial gainful activity is defined as work activity that is both substantial and gainful. 20 C.F.R. § 416.972. "Substantial work activity is work activity that involves doing significant physical or mental activities." C.F.R. § 416.972(a). "Gainful work activity is work activity that you do for pay or profit." C.F.R. § 416.972(b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.920(c). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, Subpart P, Appendix 1. The Listing describes impairments that the Social Security Agency considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). A claimant's impairment may also be considered "medically equivalent" to a listed impairment if it is at least equal in severity and duration to the criteria of any listed

impairment. 20 C.F.R. § 416.926(a). If a claimant's impairments meet or medically equal any of the listings, disability is conclusively presumed and benefits are awarded. *See* 20 C.F.R. § 416.920(d); *Lounsberry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. *Id.* An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR")[4] 96-9p, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite her limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996); *see also* 20 C.F.R. § 416.945(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). An RFC must include an individual's functional limitations or restrictions as a result of all of her impairments—even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e))—and must assess her "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the vocational expert is incomplete and, therefore, the ALJ's reliance on the vocational expert's answers is improper)).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of

---

[4] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1  medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court

2  must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard

3  and substantial evidence in the record as a whole supports the decision. *See Bayliss v.*

4  *Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). If the ALJ determines a claimant has

5  sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is

6  denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the

7  burden of proving that she is unable to perform past relevant work. *Id.* If the claimant meets

8  this burden, a *prima facie* case of disability is established. *Id.*

9         The ALJ then bears the burden of establishing that the claimant is not disabled

10  because there is other work existing in "significant numbers" in the national or regional

11  economy the claimant can do, taking into account the claimant's RFC, age, education, and

12  work experience.   20 C.F.R. § 416.920(g); 20 C.F.R. § 404.1560(c)(1)–(2); *see also*

13  20 C.F.R. § 404.1520(g)(1).  The ALJ usually meets this burden either (1) by the testimony

14  of a vocational expert who assesses the employment potential of a hypothetical individual

15  with all of the claimant's physical and mental limitations that are supported by the record,

16  or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, Subpart P,

17  Appendix 2. *Lounsburry*, 468 F.3d at 1114–15; *Hill*, 698 F.3d at 1162. The determination

18  of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R.

19  §§ 404.1520, 416.920; *Tackett*, 180 F.3d at 1099.

**B. The ALJ's Application of the Five-Step Process in This Case**

20         At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful

21  activity since 1989. AR 22. At step two, the ALJ determined that the claimant has a severe

22  impairment—adjustment disorder with depressed mood and anxiety. AR 22. The ALJ

23  determined that Plaintiff's hypertension, irregular periods, dissociative identity disorder,

24  post-traumatic stress disorder, and obesity are non-severe and do not pose more than a

25  minimal limitation on her ability to perform basic work activities. AR 23.

26         At step three, the ALJ determined that Plaintiff does not have an impairment or a

27  combination of impairments that meets or medically equals any of the impairments in the

28  Listing. AR 23. The ALJ determined that neither Paragraph B's nor Paragraph C's criteria

had been met. AR 23–24. As for Paragraph B, the ALJ determined that Plaintiff's mental impairments did not result in one "extreme" or two "marked" limitations: "In understanding, remembering, or applying information, the claimant has no limitation. In interacting with others, the claimant has a moderate limitation. As for adapting or managing oneself, the claimant has experienced a mild limitation." AR 23. As for Paragraph C, the ALJ determined that Plaintiff's mental disorders were not "serious and persistent." AR 24.

The ALJ further determined that Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to understand, remember, and carry out simple instructions and tasks and she should not work in a setting which includes constant/regular interaction with the general public or more than infrequent handling of customer complaints." AR 24. Though Plaintiff's treating therapist, Rhonda Smallwood, stated that Plaintiff had limited ability to follow multiple directions and did not possess work-related skills, the ALJ found these statements inconsistent with her own treating assessments, "which indicated the claimant's mental conditions do not result in a functional impairments on the claimant's work." AR 26–27. Though Plaintiff's treating nurse practitioner, Debra Graham, stated that Plaintiff had marked to extreme functional limitations for work-related activities, the ALJ found this statement inconsistent with the record as a whole. AR 27. For example, the ALJ noted that "[t]he records show the claimant's mental health conditions were generally stabilized and improved through therapy and medication." AR 26; *see also* AR 25 ("[t]hrough treatment, the record indicated the claimant's mental conditions steadily improved. . . the claimant worried less and her anxiety improved. . . discussing the past and journaling had been helpful and her therapist noted the claimant was more animated and engaged . . .[and] the claimant stated feeling better").

At step four, the ALJ reiterated that Plaintiff did not have any relevant past work. AR 28. At step five, based on Plaintiff's RFC and the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform jobs existing in the national economy, including representative occupations of dishwasher, cleaner, and floorwaxer. AR 28. Accordingly, the ALJ found that Plaintiff has not been disabled since June 3, 2015, the date

of her application. AR 29.

## IV.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676. 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## V.   PARTIES' POSITIONS

In her merits brief, Plaintiff seeks judicial review of the Commissioner's denial of her application for social security disability and supplemental security income benefits. ECF No. 20. She contends that the ALJ incorrectly "dismissed all of my treatments of 2.5 years I was getting from my psychiatrist and therapist, and [instead] listen[ed] to a state mental exam evaluator who saw me for 5 minutes." *Id*. She notes that the ALJ did not consider the opinion of Christine Johnson, who has treated her for one and one-half years. *Id*. Plaintiff also notes that Rhonda Smallwood diagnosed her with, among other things, post-traumatic stress disorder. *Id*. Plaintiff further contends that, contrary to the ALJ's

conclusion, medication and therapy did not help her and her symptoms have not improved. *Id*.

In its opposition brief, the Commissioner contends that the decision of the ALJ should be affirmed, or, in the alternative, remanded for further administrative development. ECF No. 23 at 8. The Commissioner contends that the ALJ properly assessed and considered Plaintiff's subjective statements, as well as the opinions of Plaintiff's therapist (Rhonda Smallwood), Plaintiff's nurse practitioner (Debra Graham), and the state agency medical consultants (Doctors Leonard Naiman, Camellia Clark, and R. Weeks; psychologists Brady Dalton and Mark Gibson). *Id*. at 4–6. The Commissioner noted that the ALJ afforded Dr. Dalton's opinion greater weight than the other state agency opinions, because it was more consistent with the record. *Id*. at 6–7. The Commissioner also noted that Ms. Smallwood's opinion was inconsistent with her treatment assessments, and Ms. Graham's opinion was inconsistent with the record as a whole; hence their opinions were considered but not given great weight. *Id*. at 6. The Commissioner further contends that Plaintiff's disagreement with the ALJ's determination that her symptoms were improving with treatment is not enough to demonstrate error, given the evidence in the record. *Id*.

## VI.   DISCUSSION

After briefly summarizing its review of the record, the Court will address each of Plaintiff's contentions in turn.

### A.   Evidence in the Record

#### 1.   *Leonard Naiman, M.D. - Non-Examining State Agency Consultant*

On August 31, 2015, Dr. Naiman reviewed Plaintiff's record and opined that Plaintiff's "concentration [was] good. Memory vague about autobiographical info, and unable to id[entify] 0 of 3 items after five min[utes]." AR 61. He further stated the Plaintiff's "allegations are credible." AR 62.

#### 2.   *Mark Gilson, Ph.D. – Non-Examining State Agency Psychologist*

On October 21, 2015, Dr. Gilson reviewed Plaintiff's record and noted mild restriction of activities of daily living, mild difficulties in maintaining concentration, mild difficulties maintaining social functioning. AR 63. However, he determined that Plaintiff's

"report of s[ymptoms] is at best partially credible." AR 63; *but see* AR 62 (Dr. Naiman stating that Plaintiff's allegations were credible).

### 3. *Brady Dalton, Psy.D. – Non-Examining State Agency Psychologist*

On February 26, 2016, Dr. Dalton opined that "findings reflect evidence of depression/mood instability. Although c[laiman]t reported multiple personalities, … c[laimain]t presents with no periods of lost time or symptoms suggestive of dissociation." AR 76. He agreed with Dr. Bhatia in her listing of dissociative identity disorder, noting that Plaintiff's "reported pathology appears to be more in line with anxiety and periods of zoning out when anxious. …Thus, an anxiety related disorder is likely." AR 76. Dr. Dalton determined that Plaintiff "is best suited for simple, low stress tasks/work in settings with limited social and public demands." AR 76. He explained that her ability to interact appropriately with the general public is moderately limited; her ability to accept instructions and respond appropriately to criticism from supervisors is moderately limited; her ability to get along with coworkers without distracting them or exhibiting behavior extremes is moderately limited; her ability to respond appropriately to changes in a work setting is moderately limited; and her appropriate social behavior is not significantly limited. AR 78–79. Dr. Dalton concluded that Plaintiff "can sustain work that does not require more than occasional public contact or collaborative effort… c[laimain]t would work best in low-stress, structured environments with predictable work tasks and with minimal social contacts with others." AR 78–79.

### 4. *Camilla Clark, M.D. – Examining State Agency Physician*

Dr. Camilla Clark is a state agency psychiatrist who conducted a psychiatric evaluation of Plaintiff for the social services disability department on September 23, 2015. AR 288. She observed that Plaintiff's "mannerisms were rambling, but social interaction with this evaluator was within normal limits…. This did not appear to be a genuine thought disorder." AR 289. Plaintiff "was not easily distracted and needed no structure from this evaluator during the evaluation." AR 289. Plaintiff "was not exhibiting florid, nor subtle psychotic behavior during [the] interview." AR 289. However, in testing Plaintiff's memory, she "was able to recall zero out of three items after five minutes." AR 289.

Plaintiff's affect was observed as being persistently subdued and the doctor saw evidence of mild depression, thus diagnosing Plaintiff with a mood disorder." AR 289–90.

### 5. Cynthia Mangene, FNP – Minor Treating Nurse Practitioner

On August 13, 2015, Ms. Mangene made a finding of depression, and referred Plaintiff to the psychiatry department. AR 279–80, 351. At the appointment, Plaintiff "state[d] she has had 'multiple personalities' for many years." AR 350.

### 6. Carol Hastanan, M.D. – Minor Treating Physician

Dr. Carol Hastanan is Plaintiff's gynecologist. On June 13, 2015, during a well woman exam, Dr. Hastanan made a finding of depressive disorder. AR 354. She then prescribed Citalopram. AR 355. On September 21, 2015, during another well woman exam, she noted that Plaintiff suffered from chronic depression. AR 373. On September 22, 2015, Dr. Hastanan put in refills for Citalopram and Hydrocholorthiazide. AR 282.

### 7. Kaili Shumilak, D.O. – Minor Treating Physician

On February 3, 2015, Dr. Shumilak made a finding of depression and noted Plaintiff's "lack of focus, easily distracted… fatigue, mild hopelessness." AR 356–57.

### 8. Debra Graham, DNP – Treating Nurse Practitioner

Debra Graham, DNP, is one of Plaintiff's treating nurse practitioners who examined Plaintiff at least twice. On December 7, 2017, Ms. Graham diagnosed Plaintiff with "PTSD, multiple personality disorder, major depressive disorder with psychosis." AR 375. She noted clinical findings of "depression, anxiety…[and] poor concentration." AR 375. She noted marked or extreme functional limitations for Plaintiff's ability to: understand, remember, or apply information; understand and learn terms, instructions, and procedures; follow one or two step oral instructions to carry out a task; describe work activities to someone else; interact with others; and cooperate with others. AR 376–77. Ms. Graham noted extreme functional limitations for Plaintiff's ability to: sequence multi-step activities; respond to requests or suggestions; keep social interactions free of excessive irritability; initiate or perform a known task; work at an appropriate and consistent pace; complete tasks in a timely manner; sustain an ordinary routine and regular attendance at work; work without extra or longer rest periods; manage oneself; respond to demands; and

adapt to changes. AR 377. Ms. Graham opined that Plaintiff would be off-task in a workplace due to mental health conditions for more than 20% of an 8-hour workday. AR 378.

On March 29, 2018, Ms. Graham diagnosed Plaintiff with "schizoaffective disorder, depressive type [and] PTSD delayed onset." AR 478. She noted that Plaintiff's "[p]sychotic symptoms included persecution delusions. There were auditory hallucinations on exam." AR 474. Further, "there was mildly impaired attention/concentration seen on exam. The patient had mildly impaired verbal short-term memory and low normal remote memory." AR 472.

### 9.  *Rhonda Smallwood, LMFT – Treating Therapist*

Rhonda Smallwood, LMFT, is one of Plaintiff's treating therapists, with whom Plaintiff had at least 64 consultations from January 8, 2016 to January 18, 2018. AR 381–82. On January 8, 2016, Plaintiff's symptoms during the visit included: poor concentration, anxiety, depressed mood, irritability, fair (75%) attention, tangential thought process, constructed/blunted affect. AR 423–24. Her immediate, recent, and remote memory were impaired. AR 424. Plaintiff explained that she "would zone out and stare at the walls." AR 427. On January 15, 2016, Plaintiff stated that she cut her hair but did not know why, felt different, and would stare and forget things. AR 391. She also complained that she "can't remember." AR 391.

On January 25, 2016, Plaintiff "discussed her belief that she has multiple personalities because her son and husband tell her that her personality changes." AR 420. Ms. Smallwood concluded that "her family mislabeled her to take on this disorder." AR 420. Ms. Smallwood also noted that Plaintiff did light chores, cooked, and cleaned. AR 420. On February 25, 2016, Plaintiff's motor activity was agitated, she was anxious, and she moved around, shifting in her seat. AR 416.

On March 2, 2016, in her letter to the Department of Social Services, Ms. Smallwood explained that "[p]erhaps the most important deterrents for her to maintain any type of job is her inability to attend, follow multiple directions and possession of any work related skills." AR 302. On March 3, 2016, Plaintiff's "present[ed] problems [we]re multiple

personalities, nightmares." AR 303. Symptoms apparent during her visit included: depressed mood, fair attention (on task 75%), constructed affect, tangential thought process, and poor coping skills. 306–08. Plaintiff's immediate, recent, and remote memory was impaired. AR 304.

On March 17, 2016, Plaintiff's attitude and mood improved, because she had reconnected with a friend from school who lives near her. AR 413. On March 20, 2016, Plaintiff appeared "depressed [and] withdrawn." AR 408. However, later Plaintiff "reported that discussing past and journaling have been helpful," and Ms. Smallwood noted that Plaintiff "appear[ed] more animated and engaged." AR 408. On March 31, 2016, Plaintiff had a positive interaction with estranged husband and "her affect lifted as she discussed this event." AR 411

On April 7, 2016, Ms. Smallwood noted that Plaintiff experienced feelings of sadness, anger, anxiety, and confusion. AR 410. On April 28, 2016, Ms. Smallwood noted that Plaintiff's "mood is depressed, anxious, confused." AR 405. She also remarked that Plaintiff had "been socializing with friend [and] drawing." AR 405. On May 8, 2016, Plaintiff complained that she "fe[lt] depressed, confused, anxious." AR 402. On June 9, 2016, Ms. Smallwood noted that Plaintiff "feels good about doing things with Linda." AR 397. On May 5, 2017, she noted that Plaintiff "[r]arely leaves her home [and] feels like she's not normal." AR 386. On October 25, 2017, Ms. Smallwood noted that Plaintiff "has regular visits with an old friend." AR 383.

In Ms. Smallwood's observations, she noted during at least[5] seven appointments that there was no change in Plaintiff's condition or reported behaviors. AR 420 (Jan 25, 2016); AR 419 (Feb. 4, 2016); AR 413 (Mar. 17, 2016); AR 412 (Mar. 24, 2016); AR 405 (Apr. 28, 2016); AR 404 (May 5, 2016); AR 396 (June 16, 2016). In diagnosing Plaintiff, Ms. Smallwood cited "major depression recurrent severe" during one visit; "major depression severe" during four visits; dependent personality disorder during three visits; post-traumatic stress disorder during three visits, which she later ruled out (*see* AR 302); and

---

[5] The record does not contain every consultation assessment.

intellectual development disorder during one visit. AR 383, 386, 388, 403, 409, 418.

### 10. Prakash Bhatia, M.D. – Treating Physician

Prakash Bhatia, MD, is one of Plaintiff's treating physicians, with whom Plaintiff had at least 13 consultations. On January 12, 2016, Plaintiff complained of "having '4 personalities,' severe nightmares, difficulty concentrating, 'zoning out,' not being able to follow conversations, crying spells, mood swings… [] loses blocks of time, has no memory of things that have happened." AR 346. For example, Plaintiff "cut her hair without remembering why." AR 346. As for her personalities, Plaintiff stated "she has an alter 'tough guy,' an alter that can't think or hear, [and] an alter that is childlike." AR 346. Plaintiff "has been on Prozac in the past which caused her to 'lose control' and Celexa [] makes her feel angry." AR 346. On February 2, 2016, Plaintiff complained that "she has been irritable, 'zoning out,' feels her 'personality changing,' feels she has been walking with more aggressive stance." AR 344. Though she noted that Plaintiff sees a therapist weekly, Plaintiff "[c]ontinues to have nightmares, anxiety." AR 343.

On February 23, 2016, Dr. Bhatia noted that Plaintiff "feels she has been irritable… and [c]ontinues to get angry easily." AR 341. However, Vistaril was effective for her anxiety, and her sleep had improved. AR 341. On March 22, 2016, Plaintiff explained that she "feels she worries less, [and her] anxiety improved." AR 338. On April 19, 2016, Plaintiff stated that, though she "feels she worries less, [and her] anxiety improved[, she] continues to dissociate at times [and has] poor attention." AR 335. On May 17, 2016, Dr. Bhatia notated that "p[atien]t feels better." AR 332.

On June 28, 2016, Plaintiff "continue[d] to have 'personality changes,' fatigue, poor concentration." AR 329. Dr. Bhatia noted that Plaintiff was "unable to follow conversation" and the doctor "had to repeat [her]self multiple times." AR 329. On July 26, 2016, Dr. Bhatia noted that Plaintiff "went back to 120 mg Latuda and [was] doing well." AR 326. However, Plaintiff "continue[d] to have 'personality changes,' fatigue, poor concentration, … continues to 'change' personality[, and] feels like she is someone else." AR 326. One personality "is 'angry', one is a child, and one is like a black cloud and blocks everything out." AR 326. On August 30, 2016, Plaintiff "state[d] she can 'feel when she

changes personality' and she looked in the mirror and felt her looks had changed also." AR 323. On November 1, 2016, Plaintiff "continue[d] to 'change personalities,' [and] draws at times when she 'changes'" AR 320. On January 10, 2017, Plaintiff "feels her personality continues to change" and noted that it "happens when she is in therapy at times." AR 317. On June 7, 2017, Dr. Bhatia noted that Plaintiff was "stable on meds." AR 311.

In Dr. Bhatia's observations, she noted during twelve appointments that Plaintiff had "impaired immediate recall [memory] and impaired recall memory." AR 347 (Jan. 12, 2016); AR 344 (Feb. 2, 2016); AR 339 (Mar. 22, 2016); AR 336 (Apr. 19, 2016); AR 333 (May 17, 2016); AR 330 (June 28, 2016); AR 327 (July 26, 2016); AR 324 (Aug. 30, 2016); AR 321 (Nov. 1, 2016); AR 318 (Jan. 10, 2017); AR 315 (Apr. 12, 2017); AR 312 (June 7, 2017). Dr. Bhatia noted twelve times that Plaintiff had "difficulty concentrating, memory problems (immediate, recent, remote), distractable, but easily redirected, oriented x3." AR 347 (Jan. 12, 2016); AR 344 (Feb. 2, 2016); AR 339 (Mar. 22, 2016); AR 336 (Apr. 19, 2016); AR 333 (May 17, 2016); AR 330 (June 28, 2016); AR 327 (July 26, 2016); AR 324 (Aug. 30, 2016); AR 321 (Nov. 1, 2016); AR 318 (Jan. 10, 2017); AR 315 (Apr. 12, 2017); AR 312 (June 7, 2017). She noted during twelve appointments that Plaintiff had "impaired ability to manage daily activities" and had "serious symptoms or serious impair[ment] in social, occupational, or school functioning" (i.e., a GAF of 50). AR 347 (Jan. 12, 2016); AR 344 (Feb. 2, 2016); AR 339 (Mar. 22, 2016); AR 336 (Apr. 19, 2016); AR 333 (May 17, 2016); AR 330 (June 28, 2016); AR 327 (July 26, 2016); AR 324 (Aug. 30, 2016); AR 321 (Nov. 1, 2016); AR 318 (Jan. 10, 2017); AR 315 (Apr. 12, 2017); AR 312 (June 7, 2017). In diagnosing Plaintiff, Dr. Bhatia cited post-traumatic stress disorder during twelve visits, adjustment disorder with depressed mood during one visit, adjustment disorder during eleven visits, dissociative identity disorder during ten visits, and "other dissociative and conversion disorders" during two visits. AR 312, 315, 318, 321, 324, 327, 330, 336, 339, 344, 347.

**B.    ALJ's Failure to Consider the Opinion of Dr. Christine Johnson**

First, Plaintiff argues that the ALJ did not consider the opinion of her treating

psychiatrist, Christine Johnson. ECF No. 20. However, upon a thorough review of the record, there are no medical records from Dr. Johnson.

It is evident from the record that Dr. Johnson exists and treated Plaintiff. For example, on her "recent medical treatment" form, Plaintiff lists Christine Johnson as the psychiatrist she sees once a month. AR 244. Further, on January 8, 2016, Ms. Smallwood noted that Dr. Johnson prescribed medication for Plaintiff. AR 425. On April 21, 2016, Ms. Smallwood noted that "client continues to forget Dr. Johnson's number." AR 407. On May 8, 2016, Ms. Smallwood noted that Plaintiff's psychiatrist is Dr. Johnson, but was unable to get her phone number. AR 402. On October 30, 2016, Ms. Smallwood noted again that Plaintiff's psychiatrist was Dr. Johnson. AR 389.

The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). Here, Plaintiff has made no request to supplement the record with Dr. Johnson's medical records, nor made the requisite showing of good cause. *See Medina v. Colvin*, No. 16cv215-GPC-KSC, 2016 WL 4705571, at *1–*2 (S.D. Cal. Sept. 8, 2016) (denying plaintiff's letter requesting the court remand so the ALJ could consider x-rays that were not in the administrative record, because he did not give any reasoning that they would change the outcome of the proceedings or that there is a reasonable explanation why the evidence was unavailable earlier) (citing *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) and *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380–81 (9th Cir. 1984)). Further, it is clear from the record that Plaintiff did not seek to give Dr. Johnson's information to her therapist, despite multiple requests, and these records were not included in the additional records given to the ALJ by Plaintiff's counsel after the hearing. AR 20, 402, 407.

### C. Weight Given to Medical Professionals Who Treated Plaintiff

Second, Plaintiff argues that the ALJ improperly relied on the state agency medical

consultants, over the opinions of the medical personnel who treated her. As to Dr. Bhatia,[6] the Court agrees.

A treating physician's opinion is entitled to special weight because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

---

[6] As for the ALJ's determination regarding Ms. Smallwood, a licensed marriage and family therapist, the Court agrees with the Commissioner that the ALJ afforded her opinion acceptable weight in light of her status as a non-acceptable medical source. *See* 20 C.F.R. § 416.902 (listing acceptable medical sources as licensed physicians, licensed psychologists, …). Opinions from non-acceptable medical sources may be evaluated based on the same factors as applied to medical opinions, but the level of articulation is lower with such opinions. *See* 20 C.F.R. § 416.927(f)(1)–(2). *But see* 20 C.F.R. § 416.927(f)(1) ("it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole."); SSR 06-03p, 2006 SSR LEXIS 5, at *8 (2006) (recognizing that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists" and, therefore, opinions from other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects."). As for the ALJ's determination regarding Ms. Graham, a doctor of nursing practice (i.e., nurse practitioner), the Court notes that licensed advanced practice registered nurses ("APNs") are considered acceptable medical sources. *See* 20 C.F.R. § 416.902(a)(7). A nurse practitioner is a type of APN. *See* Beth Greenwood, *Advance Practice Nurses vs. Nurse Practitioners,* CHRON https://work.chron.com/advanced-practice-nurses-vs-nurse-practitioners-13968.html (last visited Nov. 25, 2020). However, since Ms. Graham only examined Plaintiff twice, and because the ALJ afforded her opinion some weight, the Court finds any error harmless.

If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991)). Where the treating physician's opinion is controverted by another physician, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on substantial evidence in the record. *See Magallanes*, 881 F.2d at 751; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). To meet this burden, an ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes*, 881 F.2d at 751).

In evaluating the record, a court makes a distinction based on a physician's relationship with a claimant. Under the regulations, the opinion of an examining, but non-treating physician is generally given deference over the opinion of a non-examining, non-treating physician. *See* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."); *Garrison*, 759 F.3d at 1012 ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. . . [i.e.,] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician.").

"An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Rather, opinions of non-examining physicians may only serve as substantial evidence "when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

3:19-cv-703-AHG

Here, the ALJ thoroughly examined the opinions of the other medical professionals, and detailed the amount of weight given to their opinions, but did not do the same for Dr. Bhatia, Plaintiff's main treating physician who saw her more than thirteen times. By not fully considering Dr. Bhatia's opinions, the ALJ erred. *See, e.g*, *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). "An ALJ must give a reviewing court the basis and amount of weight accorded—the Court is not to guess." *Nguyen v. Berryhill*, No. 17cv1406-MMA-NLS, 2018 WL 3706860, at *16–*17 (SD Cal Aug. 3, 2018) (concluding that the ALJ erred in providing a summary of a treating physician's findings but not including specific reasons why he accorded the opinion lesser weight); *see Garrison*, 759 F.3d at 1012–13 (concluding that "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than … asserting without explanation that another medical opinion is more persuasive..."); *Van Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (concluding that "the ALJ erred because he neither explicitly rejected the opinion of [the examining physician], nor set forth specific legitimate reasons for crediting [the non-examining physician] over [the examining physician]").

Furthermore, Dr. Bhatia's opinions are consistent with the record as a whole and are uncontradicted. An ALJ may only disregard an uncontradicted treating physician's opinion for "clear and convincing reasons . . . supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. For example, during twelve of Dr. Bhatia's appointments with Plaintiff, she noted that Plaintiff had "impaired immediate recall [memory] and impaired recall memory" and "difficulty concentrating, memory problems (immediate, recent, remote)." AR 347 (Jan. 12, 2016); AR 344 (Feb. 2, 2016); AR 339 (Mar. 22, 2016); AR 336 (Apr. 19, 2016); AR 333 (May 17, 2016); AR 330 (June 28, 2016); AR 327 (July 26, 2016); AR 324 (Aug. 30, 2016); AR 321 (Nov. 1, 2016); AR 318 (Jan. 10, 2017); AR 315 (Apr. 12, 2017); AR 312 (June 7, 2017). Similarly, State Agency Dr. Naiman opined that Plaintiff's "[m]emory vague about autobiographical info, and unable to id[entify] 0 of 3 items after five min[utes]." AR 61. Also, in testing Plaintiff's memory, State Agency Dr. Clark noted

Plaintiff "was able to recall zero out of three items after five minutes." AR 289. Likewise, Ms. Graham noted that Plaintiff "had mildly impaired verbal short-term memory and low normal remote memory." AR 472; AR 377 (Ms. Graham also noted extreme functional limitations for Plaintiff's ability to sequence multi-step activities). Ms. Smallwood also noted multiple times that Plaintiff's immediate, recent, and remote memory were impaired. AR 304, 424. By not fully considering Dr. Bhatia's opinion, at step three, the ALJ concluded erroneously that "[i]n understanding, *remembering*, or applying information, the claimant has no limitation." AR 23 (emphasis added); *see, e.g.*, *Jarrett v. Colvin*, No. C15-5176-BHS-JPD, 2015 WL 9647627, at *4 (W.D. Wash. Nov. 30, 2015) ("An ALJ may not 'cherry pick' from the record to support a conclusion, but must account for the context of the record as a whole. . . . Impermissible cherry-picking is therefore an issue of evidentiary support: an ALJ may not simply cite isolated pieces of evidence as support for a conclusion, without taking into account the record as a whole."); *see generally Reddick*, 157 F.3d at 723 (finding that the ALJ's determination was not supported by substantial evidence in part because "the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports").

Therefore, in not fully considering treating physician Dr. Bhatia's opinion, and not providing specific and legitimate reasons for giving her opinion less weight than the non-treating state agency physicians, the ALJ erred.

### D.    Whether Plaintiff's Symptoms Improved

Third, Plaintiff argues that the ALJ improperly concluded that her symptoms had improved with medication and therapy. The ALJ specifically found that "the record indicates the claimant's mental conditions steadily improved." AR 25. This finding is not supported by substantial evidence.

"'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676. 679 (9th Cir. 2005)); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). When the evidence "can reasonably support either affirming or

reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]"; rather, the Court only reviews "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Although the record indicates that Plaintiff may have shown some improvement in her mental condition,[7] there is no evidence in the record that her condition had improved with respect to the deficits in Plaintiff's memory or her ability to work.[8] "The Ninth Circuit

_____

[7] *See, e.g.*, AR 420 (In January 2016, Ms. Smallwood noted that Plaintiff did light chores, cooked, and cleaned); AR 341 (In February 2016, Dr. Bhatia noted that Vistaril was effective for Plaintiff's anxiety and her sleep had improved); AR 408 (In March 2016, Ms. Smallwood noted that Plaintiff's attitude and mood improved); AR 338 (In March 2016, Dr. Bhatia noted that Plaintiff worried less and her anxiety was improved); AR 408 (In late March 2016, Ms. Smallwood noted that Plaintiff appeared more animated and engaged); AR 332 (In May 2016, Dr. Bhatia noted that "patient feels better"); AR 397 (In June 2016, Ms. Smallwood noted that Plaintiff felt good about doing things with Linda); AR 326 (In July 2016, Dr. Bhatia noted that Plaintiff "went back to 120 mg Latuda and [was] doing well"); AR 311 (In June 2017, Dr. Bhatia noted that Plaintiff was "stable on meds"). However, the record also includes many instances where Plaintiff's symptoms resurface shortly thereafter showing an improvement. *See, e.g.*, AR 410 (In April 2016, after improvement in March, Plaintiff experienced feelings of sadness, anger, anxiety, and confusion); AR 335 (In April 2016, though Plaintiff worried less and controlled her anxiety, she continued to dissociate and have poor attention); AR 329 (In June 2016, after improvement in May, Plaintiff continued to have personality changes, fatigue, and poor concentration); AR 386 (In May 2017, after improvement in June 2016 including socializing with Linda, Plaintiff rarely left her home and does not feel normal).

[8] Findings regarding Plaintiff's impaired memory include: AR 61 (Dr. Naiman, Aug. 31, 2015); AR 289 (Dr. Clark, Sept. 23, 2015); AR 424 (Ms. Smallwood, Jan. 8, 2016); AR 347 (Dr. Bhatia, Jan. 12, 2016); AR 344 (Dr. Bhatia, Feb. 2, 2016); AR 304 (Ms. Smallwood, Mar. 3, 2016); AR 339 (Dr. Bhatia, Mar. 22, 2016); AR 336 (Dr. Bhatia, Apr. 19, 2016); AR 333 (Dr. Bhatia, May 17, 2016); AR 330 (Dr. Bhatia, June 28, 2016); AR 327 (Dr. Bhatia, July 26, 2016); AR 324 (Dr. Bhatia, Aug. 30, 2016); AR 321 (Dr. Bhatia, Nov. 1, 2016); AR 318 (Dr. Bhatia, Jan. 10, 2017); AR 315 (Dr. Bhatia, Apr. 12, 2017); AR 312 (Dr. Bhatia, June 7, 2017); AR 377 (Ms. Graham, Dec. 7, 2017) AR 472 (Ms. Graham, Mar. 29, 2018).

has noted that, particularly where mental illness is involved, periods of improvement do not mean that the claimant's impairments no longer affect his workplace functioning." *Bisson v. Colvin*, No. C16-05704BHS, 2017 WL 765386, *3 (W.D. Wash. Feb. 28, 2017) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)). For example, the Ninth Circuit has "emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017–18; *see Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200–01 (9th Cir. 2008) ("Nor are the references in [a doctor's] notes that [the plaintiff]'s anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Although a Global Assessment of Function ("GAF") score can be discounted because it is only a snapshot of a person's condition at a moment in time, *see, e.g.*, *Veronica H. v. Saul*, No. 18 C 7447, 2019 WL 3935039, at *2 (N.D. Ill. Aug. 20, 2019), Dr. Bhatia's GAF score for Plaintiff was consistently "50" from January 2016 through June 2017. AR 312, 315, 318, 321, 324, 327, 330, 333, 336, 339, 344, 347. This indicates that Plaintiff had "serious symptoms <u>or</u> serious impair in social, occupational, or school functioning" for a prolonged period of time, even though as the ALJ notes, Dr. Bhatia found in June 2017 that Plaintiff had achieved some stability on medications. AR 23, 311. Dr. Bhatia also consistently found throughout this period that Plaintiff showed "impaired immediate recall and impaired recall memory;" "difficulty concentrating, memory problems (immediate, recent, remote);" and "Deficit in abstract thinking and judgment (impulsive, violent,

dangerous)." *See, e.g.*, AR 312, 315, 318, 321, 324, 327, 330, 333, 336, 339, 344, 347.

The ALJ does not explain how he found Plaintiff's mental conditions "steadily improved" given Dr. Bhatia's multiple findings that Plaintiff's functioning in areas of memory, concentration, and judgment remained poor despite the one notation by Dr. Bhatia describing her as "stable on meds." Dr. Bhatia's treatment records also demonstrate that the ALJ's conclusion that "[i]n understanding, remembering, or applying information, [Plaintiff] has no limitation," AR 23, is not supported by substantial evidence.[9]

Therefore, the ALJ's conclusion that Plaintiff's mental conditions "steadily improved" is not supported by substantial evidence in the record, and was error.

## VII.   THE APPROPRIATE REMEDY

Having found that the ALJ's decision was in error and must be reversed, the next issue for determination is whether a remand for further proceedings, or a remand for payment of benefits, is appropriate. "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of this court." *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "'If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate.'" *Id.* (brackets in original) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The court "should credit evidence that was rejected during the administrative process and remand for

---

[9] The ALJ's reliance on Plaintiff's ability to perform limited household tasks also does not provide substantial evidence for his conclusions. There is no evidence that these activities are in any way comparable to working for a sustained period of time. And, consistent with Dr. Bhatia's treatment records, Plaintiff's son described her limitations as "can't pay attention," and "can't stay on task;" she needs "daily" reminders for personal grooming and medication; and "you have to tell her multiple times and sometimes she still does it wrong." AR 195, 197, 200.

an immediate award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Crediting the evidence that was rejected, the ALJ should have formulated a correct RFC that properly accounted for Plaintiff's documented issues with concentration and memory. The ALJ's hypothetical question to the vocational expert expressly assumed that Plaintiff was "able to understand and remember and carry out simple instructions and tasks," but that is not supported by substantial evidence in the record. AR 54. When the vocational expert was asked about Plaintiff's ability to find work with restrictions that are supported by substantial evidence, the vocational expert testified that there were no jobs available:

> Q. [A]re there any jobs available for a hypothetical person with an excessive amount of time off-task, meaning 10 to 15 percent of the workday?
> A. No.
> Q. Any work available for a hypothetical person with two or more absences per month due to symptoms of their mental health conditions?
> A. No.

AR 54–55. When the proper restrictions were applied, the vocational expert testified that they would prohibit Plaintiff from finding work.

The key issue, then, is whether the Court should remand for further administrative proceedings as to step five, where the Commissioner bears the burden of proving that Plaintiff can perform other work that exists in significant numbers in the national economy, taking into account Plaintiff's RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1560(c)(1)-(2);   20   C.F.R.   § 404.1520(g)(1).   Here, a review of the record demonstrates that this remaining issue has already been addressed by the testimony of the vocational expert, rendering further proceedings unnecessary.

"Where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke*, 379 F.3d at 593; *see also Garrison,* 759 F.3d at 1023 (remand for

24

benefits is appropriate where "a careful review of the record discloses no reason to seriously doubt" that the claimant is disabled). When Dr. Bhatia's opinion is given appropriate weight, the vocational expert's testimony confirms that Plaintiff cannot perform work in the general economy. The record here is fully developed, and there is no need to further delay payment of benefits to Plaintiff. Remand for an award of benefits is appropriate.

## VIII.   CONCLUSION

The ALJ erred by rejecting the opinion of Dr. Bhatia and basing his RFC determination on an erroneous finding that Plaintiff's mental conditions had steadily improved. The ALJ's opinion is not supported by substantial evidence in the record. The appropriate remedy here, given the fully developed record, is to avoid any further unnecessary delay and remand for an award of benefits.

The Court therefore **REVERSES** the Commissioner's denial of disability insurance benefits and **REMANDS** to the ALJ for the calculation and award of benefits.


**IT IS SO ORDERED**.

Dated:  November 30, 2020

Honorable Allison H. Goddard
United States Magistrate Judge