UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE V.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>                                    Defendant. | Case No.: 3:19-cv-00703-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(E);**<br><br>**(2) VACATING ORDER RESOLVING PLAINTIFF'S MOTION FOR JUDICIAL REVIEW, REVERSING DENIAL OF BENEFITS, AND REMANDING FOR PAYMENT OF BENEFITS (ECF NO. 24); AND**<br><br>**(3) REMANDING ACTION FOR FURTHER PROCEEDINGS**<br><br>**[ECF NOS. 24, 25]** |

This matter comes before the Court on Defendant Andrew Saul, Commissioner of Social Security's ("Defendant" or "the Commissioner") Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (the "Motion for Reconsideration"). ECF No. 24.

## I.   BACKGROUND

On April 17, 2019, Plaintiff Rose V. ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed a civil complaint against Defendant, seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 405(g).  ECF No. 1.

Plaintiff submitted a brief on the merits on February 5, 2020, and Defendant filed an opposition brief on March 11, 2020. ECF Nos. 20, 23. Plaintiff did not file a reply. The Court took the briefing under submission without oral argument and, on November 30, 2020, issued an order reversing the Commissioner's final decision and remanding Plaintiff's case for immediate payment of benefits (the "Reversal Order"). ECF No. 24.

On December 9, 2020, the Commissioner filed the Motion for Reconsideration presently before the Court. ECF No. 25. Defendant argues, pursuant to Rule 59(e), that reconsideration of the Court's Reversal Order is necessary to correct manifest errors of law.

## II.   LEGAL STANDARD

Under Rule 59(e), the Court has the power to reconsider and amend a judgment, and a party seeking such remedy must file a motion within 28 days of the judgment's entry. *See* Fed. R. Civ. P. 59(e). Amendment of a judgment pursuant to this rule is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). Accordingly, a Rule 59(e) motion for reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the

controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Parties may not use a Rule 59(e) motion "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

## III. DISCUSSION

In the Reversal Order, the Court based its decision on the finding that the ALJ improperly rejected the opinion of Plaintiff's treating psychiatrist, Dr. Prakash Bhatia, because the ALJ did not give specific and legitimate reasons supported by substantial evidence for giving his opinion less weight than the non-treating state agency physicians. In particular, the Court cited to numerous treatment records from Dr. Bhatia reflecting observed deficits in Plaintiff's memory and concentration, and judgments that Plaintiff had serious symptoms or serious impairment in social, occupational, or school functioning. *See* ECF No. 24 at 14-23. The Court found that the ALJ's stated reasons for rejecting Dr. Bhatia's findings related to Plaintiff's functioning in areas of memory, concentration, and judgment—that Plaintiff's symptoms steadily improved and that Plaintiff was stable on medication—were not supported by substantial evidence. *Id.* at 20-23. The Court concluded that reversal and remand for an immediate award of benefits was warranted, based on testimony from the vocational expert at the hearing below that a hypothetical person with an excessive amount of time off-task or with two or more absences per month due to symptoms of her mental health conditions would not be able to perform any jobs existing in significant numbers in the national economy. *Id.* at 24-25.

The Commissioner asserts several grounds of error in the Motion for Reconsideration. Specifically, Defendant contends the Court erred by: (1) considering the clinical findings contained in treatment records of Plaintiff's treating psychiatrist, Prakash Bhatia, M.D., as a treating physician's opinion; (2) in determining reversal without remand

was appropriate, relying on testimony from the vocational expert regarding hypothetical functional limitations posed by Plaintiff's attorney during the administrative hearing, and attributing those proposed limitations to Dr. Bhatia; and (3) reversing for an award of disability insurance benefits ("DIB"), when Plaintiff applied for SSI and not DIB.

In addition, with respect to the first claim of error regarding the Court's evaluation of the evidence contained in Dr. Bhatia's treatment records, Defendant raises further related claims of error. Namely, that even if the Court properly treated this evidence as a treating physician's opinion, (1) the ALJ gave specific and legitimate reasons supported by substantial evidence to reject it; and (2) the rejection was harmless even if erroneous, because Dr. Bhatia did not opine that Plaintiff had mental limitations beyond those that the ALJ incorporated into his determination of Plaintiff's residual functional capacity ("RFC"). The Court addresses these arguments in Sections III.B. and III.C. before turning to the Commissioner's remaining claims of error.

### A. <u>Whether the Court Erred by Treating Dr. Bhatia's Clinical Findings as Medical Opinion Evidence</u>

First, Defendant argues the Court committed clear legal error by erroneously conflating objective medical evidence contained in Dr. Bhatia's treatment records with medical-opinion evidence from Dr. Bhatia. ECF No. 25-1 at 3-4.

Agency regulations define "[m]edical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

Defendant contends that the record statements that the Court treated as "medical opinions" from Dr. Bhatia should instead have been treated as "objective medical evidence," which is defined in the regulations as "medical signs, laboratory findings, or both." *Id.* at 3 (quoting 20 C.F.R. § 416.913(a)(1)). "Medical signs," in turn, include "psychological abnormalities that can be observed . . . e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. § 416.902(l).

Defendant takes the position that the Court's recitation of statements from Dr. Bhatia's treatment notes was an improper elevation of objective medical evidence to the status of a treating physician's opinion, arguing, "while the Court concludes that Dr. Bhatia submitted a medical opinion, the Court does not identify a medical opinion from Dr. Bhatia in the record. Instead, the Court cites to Dr. Bhatia's clinical findings, such as observations of impaired memory and concentration, not a medical opinion." ECF No. 25-1 at 4 (internal citations omitted).

The Court agrees that clarification of its Order is needed on this point. It is true that treating physicians often submit formal "medical source statements" reflecting their medical opinions on claimants' functional limitations to the SSA, to aid in disability determinations regarding their patients. However, "medical opinion evidence" is not limited to medical source statements. Rather, medical opinion evidence encompasses any statement reflecting a medical source's judgments about a claimant's ability to work, even where the statements are not formally submitted as medical source statements. 20 C.F.R. § 416.927(a)(1); *see, e.g.*, *Sheffer v. Barnhart*, 45 F. App'x 644, 645–46 (9th Cir. 2002) (finding that the ALJ's failure to request medical source statements from the plaintiff's treating physicians would not be reversible error in any event, because "[a] number of the [plaintiff's] doctors—including [two treating physicians]—stated opinions regarding what work, if any, [the plaintiff] could still perform. ***Medical source statements provide the same information.*** Thus, the ALJ's failure to request medical source statements did not result in any prejudice or unfairness.") (emphasis added); *Williams v. Astrue*, No. ED CV 08-549-PLA, 2010 WL 431432, at *5 (C.D. Cal. Feb. 1, 2010) (treating two Medical Report forms submitted by the claimant's treating physician to San Bernardino County Transitional Assistance Department as medical opinion evidence). Relevant here, Global Assessment of Functioning ("GAF") scores are properly treated as medical opinion evidence. *Macias v. Colvin*, No. 1:15-CV-00107-SKO, 2016 WL 1224067, at *8 (E.D. Cal. Mar. 29, 2016) ("As recognized by [the Social Security Administration's Administrative Memorandum AM-13066, effective date July 22, 2013], a GAF rating is medical opinion

evidence as defined in 20 C.F.R. § 404.1527(a)(2).");[1] *Dyer v. Berryhill*, 762 F. App'x 439, 441 (9th Cir. 2019) (treating GAF scores as medical opinion evidence, as distinct from clinical findings).[2]

The Court agrees with the Commissioner that record evidence reflecting **solely** a treating physician's summary of a claimant's subjective reports of her symptoms, or the physician's neutral observations of medical signs, does not amount to a "statement[]" from the treating source "that reflect[s] **judgments** about the nature and severity of [the claimant's] impairment(s)," including the claimant's "symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairments, and [her] physical and mental restrictions," as necessary to qualify as a "medical opinion" under the regulations. 20 C.F.R. § 416.927(a)(1) (emphasis added). And, upon review of the ruling at issue, the Court finds that it should have more clearly differentiated between citations to the record

---

[1] 20 C.F.R. § 404.1527(a)(2) is a parallel regulation to 20 C.F.R. § 416.927(a)(2), but it governs claims for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, rather than claims for SSI under Title XVI of the Act. The two regulations are otherwise identical and are applied the same way.

[2] Moreover, the conflation of medical opinion evidence and objective medical evidence finds support in case law, insofar as "[m]edical opinion evidence is merely an example of objective medical evidence[.]" *Williams v. Berryhill*, No. CV 17-03624-JDE, 2018 WL 791144, at *4 (C.D. Cal. Feb. 8, 2018) (citing *Vigil v. Comm'r of Soc. Sec.*, 2017 WL 4075581, at *8 (E.D. Cal. Sept. 14, 2017) (explaining that medical opinions are based on the objective medical evidence and thus do not constitute separate and distinct reasons for discrediting a plaintiff's subjective reports of symptoms); and *Petit v. Astrue*, 2012 WL 3965146, at *7 (C.D. Cal. Sept. 11, 2012) (medical opinions are examples of objective medical evidence)). *See also Ward B. T. v. Saul*, No. ED CV 19-00123-RAO, 2019 WL 6310272, at *10–11 (C.D. Cal. Nov. 25, 2019) (finding that the ALJ's enumerated two reasons for discrediting a plaintiff's subjective symptom allegations—that the allegations were not consistent with the objective medical evidence, and that there was no medical source statement endorsing the plaintiff's allegations—in fact amounted to "only one reason" because "medical opinion evidence is merely an example of objective medical evidence") (internal alterations and quotations omitted).

reflecting Dr. Bhatia's neutral observations or summaries of Plaintiff's subjective reports, and those reflecting Dr. Bhatia's *judgments* about the nature and severity of Plaintiff's impairments, including Plaintiff's "symptoms, diagnosis and prognosis," and her "mental restrictions." *See id.*

However, that lack of clarity does not amount to clear error. Dr. Bhatia's treatment records—and the Court's citations thereto—do indeed contain judgments about the nature and severity of Plaintiff's impairments. For example, as discussed by the Court in its prior order, Dr. Bhatia's treatment records reflect judgments, upon mental status examination at twelve appointments, that Plaintiff had "impaired immediate recall [memory] and impaired recall memory," that Plaintiff had "difficulty concentrating, memory problems (immediate, recent, remote)[,]" and, significantly, that Plaintiff had a GAF score of 50, indicating "serious symptoms or serious impair[ment] in social, occupational, or school functioning." ECF No. 24 at 15 (citing AR 347, 344, 339, 336, 333, 330, 327, 324, 321, 318, 315, and 312). *See also* ECF No. 24 at 19-20 (explaining that Dr. Bhatia's opinions that Plaintiff had "impaired immediate recall [memory] and impaired recall memory" and "difficulty concentrating, memory problems (immediate, recent, remote)" were uncontradicted). All of this evidence was properly treated as medical opinion evidence pertaining to the nature and severity of Plaintiff's impairments, Plaintiff's symptoms, and Plaintiff's mental restrictions.

Therefore, the Court **REJECTS** the Commissioner's first claim of error as a basis for reconsideration of the Court's Reversal Order.

## B. Whether the Court Properly Found that Substantial Evidence Did Not Support the ALJ's Rejection of Dr. Bhatia's Opinions

Importantly, the ALJ addressed the various GAF scores in the record, including Dr. Bhatia's GAF rating of 50, and assigned them weight the same way he assigned weight to other medical opinion evidence. *See* AR 27. The ALJ expressly gave "little weight to these GAF scores since they are inconsistent with the claimant's mental health treatment records, which indicate that her symptoms were mild to moderate and that they improved with

treatment and medication. Further, the claimant was able to do a range of activities of daily living including prepar[ing] simple meals, perform[ing] household chores, and handl[ing] finances." AR 27. That finding alone constitutes a rejection of a treating physician's medical opinion, requiring the support of specific and legitimate reasons in order to be upheld on review.

On this point, the Court erred by imprecisely stating that the ALJ "thoroughly examined the opinions of the other medical professionals, and detailed the amount of weight given to their opinions, but did not do the same for Dr. Bhatia[.]" ECF No. 24 at 19. With respect to Dr. Bhatia's opinion that Plaintiff had GAF score of 50, the ALJ assigned that opinion little weight and explained why. But, as the Court previously found, the reasons the ALJ gave for the weight he assigned to Dr. Bhatia's GAF score were not specific and legitimate reasons supported by substantial evidence. Namely, the Court found there was not substantial evidence in the record to support the ALJ's conclusions that (1) Plaintiff's mental impairments steadily improved, or (2) Plaintiff's ability to perform limited household tasks was inconsistent with Dr. Bhatia's assessment of Plaintiff's functioning in areas of memory, concentration, and judgment. *See* ECF No. 24 at 22-23.

Defendant also challenges this finding, arguing that the Court "improperly concluded the ALJ's finding that Plaintiff's condition improved with treatment necessitated reversal." ECF No. 25-1 at 5.

To reject a treating physician's opinion regarding a claimant's level of functioning, the ALJ must provide specific and legitimate reasons supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Defendant argues that, even assuming *arguendo* that Plaintiff's condition did not improve with treatment, "the ALJ's interpretation of the medical evidence, reliance on the medical opinions, and Plaintiff's demonstrated capabilities would still warrant affirmance" because "substantial evidence" is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 5-6 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)) (other citation omitted). The Court will revisit, in turn, each of the ALJ's two proffered reasons

for rejecting Dr. Bhatia's opinion, and whether each reason is specific, legitimate, and supported by substantial evidence.

> i.   *Whether the ALJ's finding that Plaintiff's symptoms improved with treatment and medication is supported by substantial evidence*

First, in giving little weight to Dr. Bhatia's GAF score (and others, including scores of 25-30 and 40 from Plaintiff's therapist Ms. Smallwood, and a score of 56 from the psychiatric consultative examiner Dr. Camellia Clark), the ALJ found such low scores "inconsistent with the claimant's mental health treatment records, which indicate that her symptoms were mild to moderate and that they improved with treatment and medication." AR 27. Although the ALJ did not cite to the record to support this portion of his analysis, earlier in the opinion, the ALJ discounted Plaintiff's own statements about the intensity, persistence, and limiting effects of her symptoms for similar reasons. AR 26. Specifically, the ALJ found Plaintiff's testimony that she had "personality changes and difficulty with paying attention, understanding, and memory," to be inconsistent, because her "mental symptoms improved and stabilized on medication." *Id.* To support this conclusion, the ALJ cited to Exhibit 6F, pages 1, 25, and 28. *Id.* These citations correspond to Dr. Bhatia's progress notes from March 22, 2016 (AR 338), April 19, 2016 (AR 335), and June 7, 2017 (AR 311). The first two of these citations refer to identical notes that Plaintiff "feels she worries less, anxiety improved." AR 335, 338 (March 22, 2016 and April 19, 2016 progress notes). The third refers to a note that Plaintiff is "stable on meds." AR 311 (June 7, 2017 progress note). Therefore, the Court assumes the ALJ was referring to this same record evidence when he later rejected various GAF assessments—including Dr. Bhatia's—as "inconsistent" with Plaintiff's mental health treatment records purportedly showing improvement with treatment and stability on medication.

The Court recognizes, as the Commissioner notes, that the "substantial evidence" standard is a low bar, requiring only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154. Indeed, the Court quoted the same case for the same proposition in its prior Order. ECF No. 24 at 8. However,

as the Court also discussed in its prior Order, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014); *see Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200–01 (9th Cir. 2008) ("Nor are the references in [a doctor's] notes that [the plaintiff]'s anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Applying this caselaw, the Court found that substantial evidence did not support the ALJ's finding that Plaintiff's mental conditions "steadily improved," because, when properly viewed within the context of Plaintiff's entire course of psychiatric treatment by Dr. Bhatia, it was not reasonable to conclude that these isolated treatment notes showed overall improvement. Nor did these few notes constitute any evidence of improvement of the key symptoms at issue—Plaintiff's limitations in understanding, remembering, or applying information. Instead, as the Court discussed in its prior Order, Dr. Bhatia consistently found that Plaintiff's GAF score was 50 from January 2016 through June 2017, and consistently found that Plaintiff showed "impaired immediate recall and impaired recall memory;" "difficulty concentrating, memory problems (immediate, recent, remote);" and "deficit in abstract thinking and judgment (impulsive, violent, dangerous)." AR 312, 315, 318, 321, 324, 327, 330, 333, 336, 339, 344, 347. These findings, which reflect a judgment by Dr. Bhatia that Plaintiff had "serious symptoms or serious impair in social, occupational, or school functioning," as well as other significant mental limitations

in understanding, remembering, or applying information, were included in the very same progress notes of Dr. Bhatia's that were cited by the ALJ to discount Plaintiff's testimony that she had "difficulty with paying attention, understanding, and memory." AR 26. Indeed, in the April 19, 2016 progress notes from Dr. Bhatia that the ALJ cited, which state that Plaintiff "worries less," and her "anxiety [is] improved[,]" Dr. Bhatia also states immediately thereafter that Plaintiff "continues to dissociate at times. Poor attention[.]" AR 335. Accordingly, these notes do not constitute "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Plaintiff's mental limitations related to understanding, remembering, or applying information improved and stabilized on medications, and the Court thus did not err in finding these isolated instances of noted "improvement" in the record failed to meet the "substantial evidence" bar to support the ALJ's conclusion in that regard.

ii.    *Whether the ALJ's finding that Plaintiff's daily activities are inconsistent with Dr. Bhatia's evaluation of her limitations is supported by substantial evidence*

The second reason the ALJ gave for rejecting Dr. Bhatia's GAF score of 50, indicating serious symptoms or serious impairment in social or occupational functioning, was that Plaintiff "was able to do a range of activities of daily living including prepar[ing] simple meals, perform[ing] household chores, and handl[ing] finances." AR 27. The record evidence the ALJ cited in support of that reason included Exhibits 3F (Adult Psychiatric Evaluation completed by consultative examiner Dr. Clark), 3E (Plaintiff's self-reported Function Report), and 4E (Third Party Function Report completed by Plaintiff's son, Ricky Vader, Jr.). AR 184-93, 195-202, 288-90.

As the Court discussed in its prior Order, Plaintiff's ability to perform limited household tasks, as outlined in the cited exhibits, does not constitute substantial evidence for his rejection of Dr. Bhatia's opinion that Plaintiff has serious symptoms or serious impairment in social or occupational functioning. *See* ECF No. 24 at 23 n.9. Dr. Clark's evaluation dated September 23, 2015 states that Plaintiff self-reported that she was able to take care of personal hygiene, could perform all chores necessary to live independently,

could take the bus, and handles her own funds. AR 289-90. However, the ALJ's characterization of how Plaintiff and her son describe Plaintiff's daily activities in their reports, which were completed only two months before Dr. Clark's evaluation in July 2015, omits the key fact that they both report that Plaintiff cannot do most of her activities without reminders. *See, e.g.*, AR 187 (Plaintiff reporting she needs reminders to take medication and to do household chores); AR 197 (Plaintiff's son stating that Plaintiff needs daily task reminders, including reminders to do household chores); AR 199 (Plaintiff's son stating that she needs reminders to go places). The fact that Plaintiff requires daily reminders to complete basic tasks is not sufficiently captured by Dr. Clark's notes regarding Plaintiff's self-report that she is capable of caring for her hygiene, performing chores, taking the bus, and handling funds.

Further, the reports from Plaintiff and her son show that even with reminders, Plaintiff has difficulty performing the basic tasks that the ALJ relies on as evidence that a GAF score of 50 is inconsistent with her daily activities. *See* AR 197; (Plaintiff's son reporting that it can take her "four hours or more to clean a small bathroom"); AR 198 (stating that Plaintiff's son helps her shop for groceries so she can make faster decisions); AR 200 (stating Plaintiff has "inability to follow and understand direction"; "is not good at paying attention"; does not finish what she starts, e.g., a conversation, chores, reading, or watching a movie; does not follow written instructions very well; and, with respect to how well Plaintiff follows spoken instructions, "you have to tell her multiple times and sometimes she still does it wrong."). As for the ALJ's statement that Plaintiff's daily activities include handling household finances, the Court notes that while the reports state that Plaintiff has the *ability* to pay bills, handle a savings account, count change, and use a checkbook, Plaintiff reports that her son handles the household finances because Plaintiff has no money of her own. AR 188. *Accord* AR 198.

Elsewhere in the opinion, the ALJ similarly relies on Plaintiff's ability to prepare simple meals, as well as Plaintiff's abilities "to attend her therapy and psychiatrist appointments regularly, socialize with her friend, [and] budget when purchasing her

groceries" to discount Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, including Plaintiff's testimony that she has difficulty paying attention, understanding, and remembering. AR 26. The "simple meals" that Plaintiff is able to prepare include microwaveable dinners, sandwiches, and soups. AR 187, 197. Plaintiff is unable to drive herself anywhere, because she could not pass the written test to obtain a driver's license despite five attempts, and thus relies on other people to drive her to her appointments, to socialize with her friend, and to the grocery store. *See* AR 52-53, 188, 198, 199.

Viewing these daily activities in the proper context, then, the Court did not clearly err in finding that these daily activities did not constitute substantial evidence to support the ALJ's finding that Plaintiff's symptoms were mild to moderate, and not as serious as suggested by Dr. Bhatia's (and others') GAF scores. Even overlooking the ALJ's incomplete characterization of the activities, the ALJ does not explain how Plaintiff's very limited activities of daily living are inconsistent with, e.g., having serious symptoms or serious impairment in occupational function, as Dr. Bhatia opined. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). For that reason, "daily activities are inconsistent with claimed disability where the plaintiff is able to spend a substantial part of the day engaged in activities that are transferable to a work setting." *Aguilar v. Berryhill*, No. CV 16-7565 SS, 2017 WL 3269376, at *4 (C.D. Cal. Aug. 1, 2017) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace")). Many courts have found comparable or even more challenging daily activities not to be inconsistent with marked or extreme mental limitations. *See, e.g.*, *Schiaffino v. Saul*, 799 F. App'x 473, 476-77 (9th Cir. 2020) (rejecting the ALJ's reliance on such activities as taking a family trip to Disneyland, going out to the woods, shooting for relaxation, running four miles a day, and going four-wheeling as "inconsistent with

social and cognitive functioning" that is "limited to the extent that all work would be prohibited," because the cited activities "do not show capacities that are transferable to a work setting") (internal quotations and citation omitted); *Feasel v. Colvin*, No. CV 14-0047-S-REB, 2015 WL 1281071, at *4-5 (D. Idaho Mar. 20, 2015) (finding that the plaintiff's daily activities of daily walks, household chores, and reading a book for up two hours while watching television were not inconsistent with his treating physician's opinion that he had marked limitations in attention and concentration for extended periods, among other mental limitations); *Aguilar*, 2017 WL 3269376, at *4 (finding the plaintiff's daily activities of going to church, taking public transportation, caring for personal needs, eating at fast food restaurants, going to the park, and driving a motor vehicle were not inconsistent with extreme mental limitations); *Crill v. Colvin*, No. 2:15-CV-0063-FVS, 2016 WL 1069661, at *5 (E.D. Wash. Mar. 17, 2016) (finding that the plaintiff's activities of caring for his mother-in-law, shopping, cooking, driving, and cleaning are not necessarily inconsistent with alleged disabling limitations in concentration and public interaction, and absent evidence suggesting such activities were transferable to a work setting, could not constitute substantial evidence to reject the plaintiff's alleged limitations caused by stress, panic, anxiety, and depression); *Chalfant v. Astrue*, No. CV 10-1684-PLA, 2011 WL 61612, at *8 (C.D. Cal. Jan. 6, 2011) (finding the plaintiff's activities of reading, watching television, and occasional computer use were not inconsistent with her treating physician's opinion that plaintiff's medication side effects of drowsiness and difficulty concentrating would interfere with her ability to work, because "there is no indication in plaintiff's testimony—or in the ALJ's discussion of plaintiff's activities" that such activities "require a level of concentration comparable to what would be required in a work setting or that these activities consumed a substantial part of her day").

      As discussed in the Court's prior Order, Plaintiff's activities of performing limited household tasks (with reminders) are not necessarily transferable to a work setting. *See* ECF No. 24 at 23 n.9. Although the ALJ here referenced the daily activities of Plaintiff that he considered to contradict her testimony and the GAF scores of various treatment

providers (including Dr. Bhatia), he made no specific findings as to whether Plaintiff spends a substantial part of her day engaged in those activities, or how those activities involve functions that would transfer to a work setting. And, as discussed, the ALJ's characterization of these activities is incomplete insofar as the ALJ did not acknowledge that Plaintiff requires frequent reminders to complete them, further diminishing their weight as evidence to contradict Plaintiff's alleged difficulties in the areas of paying attention, understanding, and memory. Therefore, the Court did not err in finding that "[t]he ALJ's reliance on Plaintiff's ability to perform limited household tasks [] does not provide substantial evidence for his conclusions." *Id. See Holcomb v. Saul*, 832 F. App'x 505, 506 n.1 (9th Cir. 2020) (noting that it was error for an ALJ to discredit a claimant's symptom testimony based on the claimant's daily activities, without making "the ***required*** 'specific finding' that [the claimant] participated in those daily activities for a 'substantial part of his day.'") (quoting *Fair*, 885 F.2d at 603) (emphasis added).

Therefore, with respect to the Commissioner's first claim of error, the Court **REJECTS** the Commissioner's argument that substantial evidence supports the ALJ's rejection of Dr. Bhatia's medical opinion indicating serious symptoms or serious impairment in social or occupational functioning.

## C. Whether the ALJ's Rejection of Medical Opinion Evidence from Dr. Bhatia was Harmless

Defendant next argues that the ALJ ***did*** include mental limitations in Plaintiff's RFC, by limiting her to unskilled work requiring her only to "understand, remember, and carry out simple instructions and tasks" and precluding her from working "in a setting which includes constant/regular interaction with the general public or more than infrequent handling of customer complaints." AR 24. Therefore, because the ALJ "assessed reduced capabilities in both cognitive functioning (including memory) and social functioning in Plaintiff's RFC[,]" the Commissioner asserts that remanding or reversing the decision is improper "both because any error would be harmless and because the ALJ's RFC assessment properly accounted for any residual limitations." ECF No. 25-1 at 6.

1    Once more, the Court agrees that its prior Order requires clarification on this point.

2    In finding error for failure to credit Dr. Bhatia's opinions regarding the nature and severity

3    of Plaintiff's impairments, the Court focused its discussion on the ALJ's finding in the

4    "paragraph B" mental functional analysis at step three of the disability evaluation that "[i]n

5    understanding, remembering, or applying information, the claimant has ***no limitation***." AR

6    23 (emphasis added). In so doing, the Court neglected to acknowledge that, despite this

7    finding, the ALJ still incorporated some limitations related to understanding, remembering,

8    and applying information in his determination of Plaintiff's RFC. *See* AR 24.

9    However, the rationale for that decision by the ALJ remains unclear. Although the

10   limitations identified in the "paragraph B" criteria are not an RFC assessment, the ALJ

11   expressly states in his opinion that his RFC assessment "reflects the degree of limitation

12   the undersigned has found in the 'paragraph B' mental functional analysis" at step three—

13   i.e., the analysis that included the ALJ's determination that Plaintiff had "no limitation" in

14   understanding, remembering, or applying information. AR 24. Given this statement by the

15   ALJ that this finding at step three is reflected in the RFC determination, the Court cannot

16   say that it is "left with the definite and firm conviction that a mistake has been committed"

17   with respect to the Court's conclusion that the ALJ's RFC determination did not adequately

18   account for Plaintiff's mental limitations in the areas of understanding, remembering, or

19   applying information, as reflected by the medical opinion evidence in Dr. Bhatia's

20   treatment records. *See Smith*, 727 F.3d at 955; *U.S. Gypsum Co.*, 333 U.S. at 395. The

21   question, then, is whether remand may still be required to resolve this apparent

22   inconsistency between the ALJ's step three finding of "no limitation" in understanding,

23   remembering, or applying information and the ALJ's RFC assessment limiting Plaintiff to

24   unskilled work.

25   The Commissioner notes that the step-five jobs the ALJ found Plaintiff could

26   perform were all unskilled positions. ECF No. 25-1 at 5. "Unskilled work" is defined in

27   pertinent part as "work which needs little or no judgment to do simple duties that can be

28   learned on the job in a short period of time. . . . [A] person can usually learn to do the job

in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a). Because the jobs identified at step five—dishwasher, cleaner, and floorwaxer—are all classified as Specific Vocational Preparation ("SVP") level 2 jobs, they are considered unskilled under the regulations. *See* DICOT 318.687-010, 1991 WL 672755 (Dishwasher (Kitchen Helper)); DICOT 381.687-022, 1991 WL 673259 (Cleaner); DICOT 381.687-034, 1991 WL 673262 (Floorwaxer).

However, a job's SVP level is a separate vocational consideration from whether a job requires the worker to understand, remember, and carry out only simple instructions and tasks. *See Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) ("A job's SVP is focused on 'the amount of lapsed time' it takes for a typical worker to learn the job's duties. A job's reasoning level, by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves. As one court noted, 'SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings.'") (quoting *Hall–Grover v. Barnhart*, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004)) (other citations omitted).[3]

---

[3] Two of the three jobs identified by the ALJ at step five—Dishwasher and Cleaner—have Reasoning Level 2 ratings. The third—Floorwaxer—has a Reasoning Level of 1. *See* DICOT 318.687-010, 1991 WL 672755 (Dishwasher (Kitchen Helper)); DICOT 381.687-022, 1991 WL 673259 (Cleaner); DICOT 381.687-034, 1991 WL 673262 (Floorwaxer). Jobs classified as requiring "Level 2" Reasoning abilities require the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from [a] standardized situation." DICOT Appendix C, 1991 WL 688702 (setting forth General Educational Development ("GED") reasoning levels "required of the worker for satisfactory job performance"). Jobs classified as requiring "Level 1" Reasoning abilities require the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

Therefore, the Court disagrees with the Commissioner that any error in rejecting Dr. Bhatia's opinions regarding Plaintiff's mental limitations would necessarily be harmless. As the Commissioner notes elsewhere in the motion for reconsideration, "the record does not contain the requisite vocational evidence necessary to ascertain whether Plaintiff would be able to perform work existing in significant numbers in the national economy if she had additional limitations beyond her RFC." ECF No. 25-1 at 7. And, because the ALJ stated that the RFC incorporated his step three findings of "no limitation" in understanding, remembering, or applying information, the Court is ill-equipped to determine on the record whether the ALJ's RFC determination and, thus, the ALJ's step-five finding would remain the same had the ALJ credited Dr. Bhatia's medical opinion evidence that Plaintiff (1) has a GAF score of 50, indicating "serious symptoms or serious impair in social, occupational, or school functioning," (2) has impaired immediate recall and impaired recall memory, (3) has difficulty concentrating and immediate, recent, and remote memory problems, and (4) has deficits in abstract thinking and judgment, including impulsive, violent, and dangerous tendencies.

16
17
18
19
20
21
22
23
24
25
26
27
28

The Court is especially reticent to draw conclusions about the potential impact of crediting such findings (and whether not doing so constitutes harmful error) given that the GAF scale "'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'" *McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000)). "Consequently, an ALJ's failure to address specific GAF scores does not constitute legal error where the ALJ's assessment of a claimant's [RFC] accounts for the claimant's severe mental impairments, is not inconsistent with the assessed GAF score, and is otherwise supported by substantial evidence in the record." *Mann v. Astrue*, No. EDCV 08-1338 AN, 2009 WL 2246350, at *1 (C.D. Cal. July 24, 2009) (citing *McFarland*, 288 F. App'x at 359) (other citation omitted). Because of the potential conflict between the ALJ's finding at step three of "no limitation" in the areas of understanding, remembering, or applying information, and his assessment of some mental limitations in the RFC, the Court is unable

to determine whether the ALJ's RFC accounts for the claimant's mental impairments or is inconsistent with the assessed GAF score.

Additionally, absent vocational evidence in the record regarding whether Plaintiff can perform jobs with Reasoning Levels of 1 or 2 notwithstanding the memory, concentration, and judgment deficits assessed by Dr. Bhatia, the Court cannot say that the ALJ's rejection of Dr. Bhatia's opinions was harmless merely because the ALJ included some mental limitations in Plaintiff's RFC. Indeed, the Social Security Administration's internal Programs Operations Manual System ("POMS") indicates that mental abilities needed for *any* job include (among others) the ability to (1) understand and remember very short and simple instructions; (2) maintain concentration and attention for approximately two hours at a time; (3) sustain an ordinary routine without special supervision; and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms. *See* SSA POMS DI 25020.010, Mental Limitations.[4] Therefore, further proceedings are necessary to determine whether Plaintiff's deficits in the areas of understanding, remembering, and applying information preclude all work, even unskilled jobs with Reasoning Levels of 1 or 2.

Accordingly, with respect to the Commissioner's first claim of error, the Court **REJECTS** the Commissioner's argument that the ALJ's rejection of Dr. Bhatia's opinion evidence was harmless, even if erroneous.

D. <u>Whether the Court Erred by Relying on Testimony from Vocational Expert Regarding Hypothetical Limitations Not Properly Attributed to Dr. Bhatia's Opinion and Reversing Instead of Remanding for Further Proceedings</u>

The Court now turns to the Commissioner's second claim of error raised in the Motion for Reconsideration. In deciding to reverse and remand for an immediate award of benefits, the Court applied the "credit-as-true" rule, i.e., that the Court "should credit

---

[4] "The POMS does not have the force of law, but it is persuasive authority." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

evidence that was rejected during the administrative process and remand for an immediate award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Applying that rule to Dr. Bhatia's opinion, the Court concluded that "[w]hen Dr. Bhatia's opinion is given appropriate weight, the vocational expert's testimony confirms that Plaintiff cannot perform work in the general economy." ECF No. 24 at 25.

This conclusion constitutes clear legal error. As the Commissioner notes, the Court's determination on this point depended on testimony from the vocational expert stating that a hypothetical person "with an excessive amount of time off-task, meaning 10 to 15 percent of the workday" *or* a hypothetical person "with two or more absences per month due to symptoms of their mental health conditions" would not be able to find work available in significant numbers in the national economy. *See id.* at 24; AR 54-55. However, these hypothetical limitations are not necessarily derived from Dr. Bhatia's opinions. That is, Dr. Bhatia's opinions that Plaintiff (1) has a GAF score of 50, indicating "serious symptoms or serious impair in social, occupational, or school functioning," (2) has impaired immediate recall and impaired recall memory, (3) has difficulty concentrating and immediate, recent, and remote memory problems, and (4) has deficits in abstract thinking and judgment, including impulsive, violent, and dangerous tendencies, do not directly translate to an assessment of Plaintiff's ability to stay on-task or to avoid excessive absences at work. Thus, it was clear legal error for the Court to apply its own interpretation of Dr. Bhatia's judgments about the severity of Plaintiff's symptoms to determine that crediting those judgments as true would necessarily translate into an inability to stay on task or show up to work. Further proceedings are necessary to determine whether crediting Dr. Bhatia's opinions as true would have resulted in a different determination at step five of the disability analysis.

Accordingly, the Court **GRANTS** the Commissioner's Motion for Reconsideration with respect to the second claim of error—namely, that the Court erred by reversing for an immediate award of benefits, when the record is insufficient to determine whether the ALJ's disability determination at step five would have been different had Dr. Bhatia's opinions been credited as true.[5]

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Reconsideration (ECF No. 25) is **GRANTED IN PART** and **DENIED IN PART.** The Court **VACATES** its prior Order Resolving Plaintiff's Motion for Judicial Review, Reversing Denial of Benefits, and Remanding for Payment of Benefits (ECF No. 24).

However, the Court's finding that the ALJ committed reversible error by failing to give specific and legitimate reasons, supported by substantial evidence, for rejecting certain medical opinion evidence from Plaintiff's treating psychiatrist stands. Accordingly, this action is hereby **REMANDED** for further proceedings, consistent with this opinion.

**IT IS SO ORDERED.**

Dated:  May 14, 2021

_____
Honorable Allison H. Goddard
United States Magistrate Judge

---

[5] The Court also agrees with the Commissioner that it was a manifest error of law to award Plaintiff disability insurance benefits under Title II of the Act, when she applied only for Supplemental Security Income under Title XVI of the Act. However, because the Court is vacating its prior order and remanding for further proceedings, this third claim of error is moot.